UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PHARAOH PHILLIPS**,                                   Case Number 5:12 CV 1997

    Plaintiff,                                          Judge Sara Lioi

    v.                                                  REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                                          Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Pharaoh Phillips filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated August 3, 2012). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on April 7, 2009, alleging a disability onset date of January 1, 2008, due to asthma, injured feet, chronic obstructive pulmonary disease (COPD), emphysema, and depression. (Tr. 147-49, 167, 193). His claim was denied initially (Tr. 116-18) and on reconsideration (Tr. 121-24). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 23). Plaintiff (represented by counsel), Plaintiff's sister, and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 24, 44). Subsequently, Plaintiff was diagnosed with colon cancer and submitted additional medical records

to the Appeals Council. (Tr. 226). After review of the additional evidence, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On August 3, 2012, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

ALJ Hearing Testimony and Disability-Reports

Plaintiff was 53 years old on the date of the ALJ hearing and lived in a house with two friends. (Tr. 50, 76-77, 199). He has an eighth grade education and dropped out of the ninth grade to work at a gas station. (Tr. 51). Plaintiff has not worked since 2004. (Tr. 51). He previously worked in a warehouse but testified he quit because he had trouble breathing due to the cold temperature of the warehouse. (Tr. 51-52, 54). However, in an undated disability report, Plaintiff said he stopped working because of "lack of work" and "the company never called [him] back." (Tr. 167). Plaintiff also worked in a cheese factory as a laborer but was fired after failing a urine test. (Tr. 53). He worked as a handyman but quit because he was not satisfied with the pay; and he quit a janitorial job because he did not get along with his manager. (Tr. 54-56). Plaintiff told a psychological consultant he earned money under the table in the past, but denied this when questioned by the ALJ. (Tr. 57-58).

Plaintiff said he could not work because of trouble breathing, standing, and walking. (Tr. 60). Nevertheless, Plaintiff testified he still smoked three-to-four cigarettes per day but took Wellbutrin which helped. (Tr. 58-59). Plaintiff also told the ALJ he had problems standing and walking due to peripheral arterial disease (PAD). (Tr. 62-63). He said his legs felt heavy and tight, which caused him to alternate between sitting for twenty minutes and standing for five minutes. (Tr. 62-63).

Plaintiff's sister, Ms. Gilak, testified at the ALJ hearing and said his inability to stand and complications from COPD prevented Plaintiff from working. (Tr. 68). She also indicated Plaintiff had cognitive learning problems, hearing issues, and a liver disorder related to alcoholism. (Tr. 67, 69). She had power of attorney over Plaintiff's affairs and stopped by to check on him three-to-four days a week. (Tr. 66-67, 76-78). On February 23, 2011, Ms. Gilak and Plaintiff's mother filed disability questionnaires on behalf of Plaintiff. (Tr. 222-25). They both stated Plaintiff had problems breathing, leg circulation issues with associated pain, and a cognitive learning disability. (Tr. 222-25).

Concerning daily activity, Plaintiff reported he watched television, talked to friends, and played guitar, although his hands cramped up. (Tr. 200, 203). He prepared his own meals, did laundry, and went out alone, but he said he could not do yard work or shop for groceries. (Tr. 201-03). He said he could lift up to 20 pounds and walk 50-100 feet before stopping to rest. (Tr. 204).

COPD

On March 24, 2009, Plaintiff presented to Robinson Memorial Hospital (Robinson) with nasal congestion and a cough. (Tr. 231). He complained of shortness of breath, but no chest pain. (Tr. 231). Muscle strength was 5/5 throughout his upper and lower extremities. (Tr. 231). X-rays showed "questionable" COPD and a diagnosis of bronchitis. (Tr. 232). He was prescribed breathing medication and instructed to follow-up. (Tr. 232). A week later, Plaintiff went to Portage Community Health (Portage) for a follow-up and complained of shortness of breath. (Tr. 239). His lungs were diminished and he exhibited some rhonchi, but his respirations were easy and no wheezing was present. (Tr. 239). He was diagnosed with exacerbated COPD and tobacco use and prescribed medication for breathing and smoking cessation. (Tr. 239).

Plaintiff returned to Portage on May 12, 2010. (Tr. 295). Although he had not been using Advair as prescribed, Plaintiff said he was breathing better. (Tr. 295). He had no cough but complained of occasional chest pain that resolved on its own. (Tr. 295). Plaintiff exhibited occasional expiratory wheezes but his respirations were easy. (Tr. 295-96). He was instructed to stop smoking and prescribed breathing medication. (Tr. 296). On October 12, 2010, Plaintiff went to Portage and reported he felt daily chest pain but rest relieved it. (Tr. 298-99). Plaintiff's lungs had normal air movement and he was prescribed Aspirin for chest pain. (Tr. 298-99). At an exam on June 21, 2010, Plaintiff exhibited occasional expiratory wheezes but his respirations were easy, and he was given Spiriva samples. (Tr. 305-06).

On November 9, 2010, Plaintiff went to Robinson for pulmonary function testing which revealed a mild airway obstruction and mildly reduced ventilation. (Tr. 312). Another pulmonary function test on December 16, 2010, showed mild hyperinflation and moderately reduced maximal voluntary ventilation. (Tr. 321). However, test administrators noted Plaintiff's poor quality of effort made the test suspect. (Tr. 321).

PAD

Plaintiff went to Portage on June 15, 2010 because the surfaces of his hands and feet were peeling. (Tr. 307). He also complained of ankle pain, which he said woke him up every night; however, there was no swelling, weakness, injury, fracture, bruising, or deformity. (Tr. 307). He also had full range of motion in his upper and lower extremities. (Tr. 307). He was diagnosed with dermatitis and prescribed ointment. (Tr. 307). On September 29, 2010, he was diagnosed with peripheral artery disease. (Tr. 300-01). On December 10, 2010, Plaintiff was initially at Robinson for pulmonary function testing "but the respiratory therapist felt that he was intoxicated and could

4

not do the test." (Tr. 319). Subsequently, he showed up at Robinson's emergency room complaining of bilateral leg pain. (Tr. 319-20). He denied chest pain or shortness of breath, said he smoked five cigarettes per day, admitted drinking three beers that morning, and said he had a problem with alcohol. (Tr. 319). On examination, Plaintiff's lungs were clear, he had full strength in his lower extremities, a normal gait, and intact sensation. (Tr. 320). He was given Toradol and said he felt better. (Tr. 320). He tested negative for deep vein thrombosis. (Tr. 320, 328).

Abdominal Pain

On June 29, 2010, Plaintiff went to Robinson and complained of abdominal pain. (Tr. 310). He was diagnosed with probable fatty infiltration of the liver (Tr. 311), which was confirmed as "alcoholic fatty liver" by a July 6, 2010 liver-function test. (Tr. 302-03).

On January 6, 2011, Plaintiff presented to Robinson with lower abdomen pain, vomiting episodes, and lack of a bowel movement in two days. (Tr. 317). He had no chest pain or shortness of breath and his lungs were clear. (Tr. 317). His abdomen was tender, but lab results revealed normal liver functions and a CT scan showed constipation. (Tr. 318). He was diagnosed with abdominal pain, secondary to constipation. (Tr. 318).

Opinion Evidence

On June 9, 2009, Plaintiff saw Yolanda Duncan, M.D., for a consultive examination and reported shortness of breath, chest pain, and back pain. (Tr. 241-49). Plaintiff said he had shortness of breath due to emphysema and could only walk 50-100 feet before he needed to rest. (Tr. 245). He told Dr. Duncan he could not climb stairs and could stand for 20 minutes or sit for 30 minutes before developing back pain. (Tr. 245). He also said he burned his feet in 1989 which made it difficult to stand. (Tr. 245). He used no ambulatory aids and had a normal gait. (Tr. 246). Plaintiff exhibited

5

slight expiratory wheezing but no crackles or rhonchi. (Tr. 246). Dr. Duncan noted Plaintiff had no muscle atrophy or muscle spasms and normal grip, manipulation, pinch, and fine coordination. (Tr. 241). He had full strength in his upper and lower extremities. (Tr. 241). Dr. Duncan found Plaintiff would not have difficulty working if he was permitted to alternate between sitting for up to 30 minutes and standing for up to 20 minutes. (Tr. 247). She found he was unable to climb stairs, his hearing and speech were normal, and he would not have difficulty traveling or following commands. (Tr. 247). Dr. Duncan interpreted a pulmonary function test which revealed only mild obstruction. (Tr. 251).

State agency physician Nick Albert, M.D. reviewed Plaintiff's records and provided a physical RFC assessment on July 2, 2009. (Tr. 256-63). He concluded Plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour work day. (Tr. 256-63). He also found Plaintiff had unlimited pushing and pulling abilities, which included the operation of hand and foot controls. (Tr. 256-57). Plaintiff had no postural or manipulative limitations, but Dr. Albert found he should avoid moderate exposure to extreme cold and heat, humidity, and fumes. (Tr. 260).

On December 3, 2009, Plaintiff went to Frederick G. Leidal, Psy. D., for a psychological examination. (Tr. 264-70). Plaintiff said he "burnt out" his lungs in 1993 while working in a restaurant where he was exposed to a mixture of cleaning chemicals. (Tr. 265). He said he had no energy and could not walk due to loss of wind. (Tr. 265). Plaintiff acknowledged drug and alcohol problems since adolescence but said he stopped using drugs when he was 25. (Tr. 266). He acknowledged he was an alcoholic and said he went though detox and rehabilitation, but also said he did not want to stop drinking. (Tr. 266). He presented to the examination under the influence of

6

alcohol and said he planned to drink after. (Tr. 266). He reported working a number of jobs, including laying cinder block "under the table" and giving guitar lessons. (Tr. 266). Plaintiff said for the past seven years he had subsisted "entirely off of financial handouts [] from various friends and earned unreported income [] he did[] [not] wish to discuss." (Tr. 267).

He was dressed casually but his clothes were soiled and he smelled of noticeably bad body odor and cigarettes. (Tr. 267). He was oriented to person, place, and time and his eye contact was normal. (Tr. 267). His gait was unencumbered and normal, his posture was normal, and there was no evidence of a visual or hearing impairment. (Tr. 267). Plaintiff brought a "hiking staff" to the appointment and said he needed it to help ambulate. (Tr. 267). However, Dr. Leidal noted Plaintiff "appeared entirely capable of walking without his staff and at one point left it in the examiner's lobby while he went out to smoke a cigarette and have a beer." (Tr. 267). The remainder of the exam related to psychological functioning was generally unremarkable. Dr. Leidal noted Plaintiff was independent in activities of daily living, without restrictions or limitations. (Tr. 268). He concluded Plaintiff's disability claim was physical in nature but he appeared to be in the borderline range of functioning. (Tr. 269). Dr. Leidal found Plaintiff's most serious symptoms included alcohol abuse, alcohol intoxication, and a moderately depressed, anxious, and irritable mood. (Tr. 269). From a psychological perspective, Dr. Leidal said Plaintiff's ability to obtain some type of productive employment without assistance was not impaired. (Tr. 270).

On December 17, 2009, state agency reviewing consultant Paul Tangemen, Ph.D., reviewed Plaintiff's records and found he had the ability to perform simple work related tasks, could relate on a superficial level, and could perform work in an environment that was not fast paced and did not involve strict production demands. (Tr. 290).

7

Plaintiff's treating physician Dr. Dhyanchand filled out a check the box "Medical Statement Regarding Peripheral Artery Disease" on February 7, 2011. (Tr. 330-31). He found Plaintiff exhibited intermittent claudication (leg discomfort), reduced or absent pulse, dry or scaly foot skin, and foot numbness in both extremities. (Tr. 330). Dr. Dhyanchand concluded Plaintiff could work only two hours a day and was limited to alternating between standing and sitting 30 minutes at a time. (Tr. 330). He found Plaintiff could lift ten pounds occasionally and five pounds frequently. (Tr. 330). Dr. Dhyanchand did not provide any statements or clinical observations to support his opinion. (Tr. 330). He also included his medical licensing information which indicated he was not a specialist in PAD, but rather a specialist in family medicine. (Tr. 331).

ALJ's Decision

The ALJ found Plaintiff had the severe impairments of COPD, PAD, borderline intellectual functioning, mood disorder, and alcohol dependence. (Tr. 29). However, despite these impairments, the ALJ found Plaintiff could perform medium work – except he must avoid even moderate exposure to pulmonary irritants, humidity, and extreme temperatures. (Tr. 32). In addition, he was limited to simple tasks that were not fast paced and did not have strict production demands, and superficial interaction with others. (Tr. 32).

The ALJ discussed treating physician Dr. Dhyanchand's opinion, gave it "little weight", and found it was conclusory and not supported by the record. (Tr. 35). The ALJ also indicated there were no records from Dr. Dhyanchand's office which showed claudication or numbness, he had a very short treatment relationship with Plaintiff, and he was not a specialist. (Tr. 35).

Medical Records Submitted to Appeals Council

On January 25, 2012, ten months after the ALJ's decision, Plaintiff's attorney faxed a letter

8

to the Appeals Council requesting Plaintiff's case be expedited due to a recent diagnosis of colon cancer. (Tr. 226). On February 8, 2012, Plaintiff's attorney submitted a letter and additional medical records showing Plaintiff had colon cancer which metastasized to his liver. (Tr. 226). In this letter, Plaintiff's attorney indicated that the "medical records reveal[ed] [] [Plaintiff's] symptoms began about the same time the ALJ's decision in this case was issued". (Tr. 226-27).

Treatment notes showed Plaintiff began having abdominal pain in early 2011, but a "CT scan of the abdomen showed constipation [and] no evidence of obstruction or metastic disease." (Doc. 20-4, at 13). He did not return for a follow-up until July 2011, when he presented with worsening abdominal symptoms. (Doc. 20-4, at 13). Another CT scan showed constipation and colonic dilation. (Doc. 20-4, at 13). He did not follow-up for some time. On September 28, 2011, Plaintiff underwent loop colostomy, and in November 2011 a colonoscopy, which revealed a mass lesion. (Doc. 20-4, at 13). A December 5, 2011 CT scan showed five enhancing lesions within the liver consistent with metastic disease. (Doc. 20-4, at 13). Treatment notes specifically indicated these lesions were not seen on the previous CT scan. (Doc. 20-4, at 13).

<u>Appeals Council Decision</u>

On June 1, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). The Appeals Council considered the additional evidence, but found the medical records showed a diagnosis of cancer eight months after the ALJ's March 24, 2011 decision. (Tr. 1-2). Since the cancer occurred at a later time, the Appeals Council found the additional evidence did not affect the decision as to whether Plaintiff was disabled beginning on or before March 24, 2011. (Tr. 1-2). *See* 20 C.F.R. § 416.1470 (Appeals Council shall evaluate medical evidence only "where it relates to the period on or before the date of the [the ALJ hearing decision."). The Appeals Council instructed

9

Plaintiff about his right to file a new application. Indeed, Plaintiff was awarded benefits pursuant to a subsequent application and new impairment. (Doc. 20, at 9-10).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a

claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff contends the Appeals Council should have considered his cancer diagnosis "new and material evidence" and awarded him benefits. In the alternative, Plaintiff argues the ALJ erred because his reasons for discounting treating physician Dr. Dhyanchand's opinion were flawed. As additional support, he argues the ALJ's reasoning was flawed because Dr. Dhyanchand's opinion was consistent with consultive examiner Dr. Duncan's opinion.

**Sentence Six Remand**

The statute is quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2001). In particular, the claimant must show (I) the evidence at issue is both "new" and "material," and (ii) there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996). The party seeking a remand bears the burden of showing that these two requirements are met. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001).

The Sixth Circuit explains "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon*, 447 F.3d at 483-84 (*citing Foster*, 279 F.3d at 357). Such evidence, in turn, is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Foster*, 279 F.3d at 357. Importantly, the additional evidence must also be time-relevant; that is, it must relate to the period on or before the date the ALJ rendered a decision. *See Wyatt v. Sec. of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.).

Here, the evidence is not material because Plaintiff's cancer diagnosis did not relate to the period on or before the ALJ's March 24, 2011 decision. While Plaintiff complained of abdominal pain during the relevant time period, the additional records showed that colon cancer was a "subsequent deterioration or change in condition", and therefore immaterial. For example, Plaintiff complained of abdominal pain in early 2011, but a CT scan showed constipation and no evidence

12

of obstruction or cancer. (Doc. 20-4, at 13). A CT scan in July 2011 showed only constipation and colonic dilation. (Doc. 20-4, at 13). In November 2011, eight months after the ALJ's decision, a colonoscopy revealed a mass lesion, subsequently diagnosed as colon cancer. (Doc. 20-4, at 13). On December 5, 2011, a new CT scan revealed five enhancing lesions within the liver consistent with metastatic disease which Dr. Martinez said "were not seen on the previous CT scan." (Doc. 20-4, at 13).

Plaintiff said he could not work because of trouble breathing, standing, and walking, and his medical records referenced conditions related to the same. While Plaintiff did complain of abdominal pain in early 2011, it was shown to be constipation. It was not until the end of 2011 that medical tests showed evidence of colon cancer. Therefore, the cancer was a deterioration or change in condition that occurred after the ALJ's decision, was not "material", and does not warrant a sentence six remand.

**Treating Physician**

In the alternative, Plaintiff argues the ALJ erred because he improperly evaluated Drs. Dhyanchland and Duncan's opinions. Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1)

13

medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.1527(c)(2). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability – the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. An ALJ"s reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F. 3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

14

*Dr. Dhyanchand*

First, Plaintiff argues the ALJ erred because his reasons for discounting Dr. Dhyanchand's opinion were insufficient and/or flawed. Not so. The ALJ discounted Dr. Dhyanchand's opinion for three reasons, and these reasons touched upon several factors an ALJ is required to consider under the regulations. 20 C.F.R. § 404.1527(c)(2); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

First, the ALJ found the extreme limitations expressed by Dr. Dhyanchand were "conclusory" and "not supported by the record." (Tr. 35). Indeed, on the form Dr. Dhyanchand submitted, he merely checked a few boxes indicating certain symptoms, but included no explanation and provided no clinical evidence or treatment records to support his findings. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (Treating physicians are entitled to great weight; however, the ALJ "is not bound by conclusory statements of doctors, particularly when they are unsupported by detailed objective criteria and documentation."). Further, the ALJ specifically pointed to a lack of treatment notes indicating claudication or numbness. (Tr. 35). In addition, the ALJ pointed to treatment notes showing medical providers did not think Plaintiff's complaints of leg pain were "severe enough to warrant immediate attention, because [Dr. Dhyanchand] stated it would be addressed upon a future visit." (Tr. 33, *referring to* 303). Accordingly, as the ALJ stated, there was no support in Dr. Dhyanchand's treatment notes for the extreme limitations provided in his assessment.

Plaintiff cites *Brewer v. Astrue*, 2011 WL 2461341 (N.D. Ohio 2011) and protests it was beyond the ALJ's expertise to conclude Dr. Dhyanchand's severe limitations were inconsistent with his treatment notes. In *Brewer*, the court found it was beyond the ALJ's expertise to conclude a

15

claimant's improved symptoms were inconsistent with functional limitations; namely, because the ALJ was essentially interpreting medical data. *Brewer*, 2011 WL 2461341, at *6. However, here, Plaintiff's use of *Brewer* is flawed because the ALJ did not conclude Dr. Dhyanchand's treatment records were inconsistent with his functional limitations; rather, the ALJ simply found there were no treatment records to support the assessment at all. Accordingly, *Brewer* is distinguishable, and not applicable to the instant case.

The ALJ also discounted Dr. Dhyanchand's opinion because he was not a PAD or arterial disease specialist and his treatment relationship with Plaintiff was "very short" for this particular impairment. Indeed, the record showed Dr. Dhyanchand was not a specialist in PAD (Tr. 331) and mainly treated Plaintiff for shortness of breath, COPD, flu symptoms, and alcohol abuse (Tr. 298-307). The ALJ properly discounted Dr. Dhyanchand's opinion and provided several "good" reasons for doing so – examining relationship, treatment relationship, supportability, and specialization. *See* 20 C.F.R. § 416.927.

### *Dr. Duncan*

Plaintiff also argues the ALJ erred because consultive examiner Dr. Duncan's opinion was consistent with Dr. Dhyanchand's opinion, and this consistency supports that Plaintiff was not capable of standing or sitting for long periods of time. However, again, the ALJ properly assigned this opinion little weight, and while he was not required to do so for a consulting physician, gave good reasons for the weight he assigned. *Slusher v. Astrue*, 2009 WL 2511936, *3 (E.D. Ky 2009); (*citing Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). (The Social Security Act's requirement that ALJ's give "good reasons" for the weight given to medical opinions applies only to treating sources).

Here, the ALJ discounted Dr. Duncan's opinion because she "relied heavily on [Plaintiff's] subjective complaints and limitations", which the ALJ found not credible. (Tr. 34). Substantial evidence supports the ALJ's finding. Plaintiff told Dr. Duncan he experienced shortness of breath and chest pain after walking 50-100 feet; back pain that started after sitting for 30 minutes or standing for 20; and difficulty standing because of burnt feet. (Tr. 245-47). However, on examination, Plaintiff exhibited slight wheezing, no rhonchi, and no crackles. (Tr. 245-47). Plaintiff had a normal gait, used no ambulatory aids, and had a full range of motion in all four extremities. (Tr. 241-47). Muscle testing showed normal shoulders, wrists, elbows, fingers, hips, knees, feet, and toes, and he had no muscle spasms or atrophy. (Tr. 241-44). Therefore, the ALJ reasonably concluded Dr. Duncan relied on Plaintiff's subjective statements of limitations, despite clinical medical tests to the contrary.

The ALJ also discounted Dr. Duncan's opinion because it was not consistent with the record. Indeed, Plaintiff's daily activities belie his stated limitations – he prepared meals, played guitar, did laundry, and walked. Further, medical records showed Plaintiff was not as limited as he claimed. For instance, on March 24, 2009, Plaintiff had shortness of breath, but no chest pain and full strength in his arms and legs. (Tr. 231). At that time, he was diagnosed with bronchitis. (Tr. 232). Numerous visits to Portage indicated Plaintiff exhibited occasional expiratory wheezes, but his respirations were easy (Tr. 239, 295-96, 305-06), and pulmonary function testing revealed only mild obstruction (Tr. 312, 321). On December 10, 2010, he presented to Robinson for leg pain and denied shortness of breath or chest pain, had full strength in his lower extremities, a normal gait, and intact sensation. (Tr. 319-20). He was also negative for deep vein thrombosis. (Tr. 320, 328). On January 6, 2011, Plaintiff presented to Robinson again, denied chest pain and shortness of breath, and his lungs were

clear. (Tr. 317).

Accordingly, the ALJ properly evaluated Dr. Duncan and Dhyanchand's opinions according to regulations and substantial evidence supports his decision.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

    s/James R. Knepp II
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).